OPINION
Appellant, Administrator, Ohio Bureau of Employment Services (OBES), appeals the decision of the Belmont County Court of Common Pleas reversing the decision of the Ohio Unemployment Compensation Board of Review and ordering appellant to pay unemployment compensation benefits to appellee, Angela Jacob.
Appellee worked for Ameritech Publishing (Ameritech) as an Advertising Sales Representative. Her duties consisted of soliciting new clients to purchase advertisement space in the Yellow Pages and encouraging current clients to renew or enlarge their advertising accounts. Chris Pinkerman (Pinkerman), Ameritech's Area Sales Manager, was appellee's immediate supervisor.
In February and March of 1997, appellee contacted First Service Federal Credit Union (First Service), in an effort to encourage that business to increase its advertisement space. Appellee's contact at First Service was Gina Perkins (Perkins). First Service already had advertised in the Yellow Pages, with monthly advertising costs of $39.00. Appellee persuaded First Service to increase its advertising to $147.50 per month. Perkins understood the $147.50 to represent the cost of advertising for a year, not a month.
On March 4, 1997, appellee had Perkins sign the Advertising Order. At the bottom of the page, above appellee's and Perkin's signatures, handwritten in large letters was "TOTAL $147.50." Appearing in the upper, right-hand side of the page were the typed words "MONTHLY RATE."
In April 1997, Ameritech sent First Service a confirmation letter thanking it for its business and informing it of the monthly charge amount. When Perkins discovered the charge was $147.50 per month, not per year, she immediately contacted appellee for an explanation. Appellee explained that the $147.50 represented a monthly rate. Perkins requested appellee to reduce the cost to conform with First Service's previous $39.00 per month rate.
Appellee went to Pinkerman and told him that she needed to reduce First Service's advertising. Pinkerman informed appellee it was too late to reconfigure the advertising to reduce First Service's rate. Pinkerman asked appellee if she had informed First Service that it was a monthly amount. She responded that she had and told him that she had written it on the bottom of the contract. Appellee also provided Pinkerman with her copy of the contract which reflected her notation that it was a monthly amount. Pinkerman then told appellee to explain to Perkins that it was too late to reduce the amount of advertising space she had purchased and, if there was still a problem, to have Perkins contact him directly. Appellee called Perkins and left a message on her voice mail saying that she was sorry, but her manager had told her she couldn't make the changes and if she had any further questions concerning the problem, she should call Pinkerman directly.
Perkins called Pinkerman and explained to him that she was not aware that the $147.50 was a monthly and not a yearly rate. She told him that the $147.50 was too much and beyond the amount First Service had budgeted for advertising. Pinkerman then asked Perkins if, on her copy of the sales contract, the amount was marked monthly. Perkins responded that it was not. Pinkerman then asked Perkins to fax him her copy of the contract. Upon receipt of Perkin's fax, Pinkerman discovered that her copy did not have the word "monthly" written next to the total at the bottom of the page. Subsequently, Pinkerman was able to make the changes to First Service's advertising and reduced their bill accordingly.
Pinkerman confronted appellee with the discrepancy between appellee's copy of the sales contract and Perkin's copy. Initially, appellee offered no explanation. However, appellee later indicated that she had added the "monthly" notation to her copy of the contract for her own reference and clarification. On April, 17, 1997, Ameritech discharged appellee on the ground that she had violated Ameritech's rules against falsification of company documents.
Appellee filed an application for determination of unemployment compensation benefits which was initially allowed and affirmed upon reconsideration. On August 18, 1997, Ameritech appealed and a hearing was conducted before a hearing officer on September 15, 1997. On September 16, 1997, the hearing officer issued his decision finding that appellee was discharged for just cause, for intentionally altering a business document to protect herself from accusations that she misled a client.
On September 29, 1997, appellee filed an Application to Institute a Further Appeal with the Review Commission. On November 4, 1997, the commission disallowed appellee's application, thereby affirming the hearing officer's decision. On December 1, 1997, appellee filed an appeal in the Belmont County Court of Common Pleas. On June 18, 1999, the trial court issued its opinion, reversing the board's decision, after determining that a single instance of erroneous bookkeeping is not evidence of misconduct. This appeal followed.
Appellant alleges in its sole assignment of error that:
 "THE LOWER COURT COMMITTED REVERSIBLE ERROR WHEN IT REVERSED THE COMMISION'S DECISION THAT APPELLEE WAS DISCHARED FOR JUST CAUSE IN CONNECTION WITH WORK WHERE THAT DECISION WAS NOT UNLAWFUL, UNREASONABLE, OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
R.C. 4141.28(O) (1), which sets forth the appeal process for unemployment compensation cases, does not create distinctions between the scope of review of common pleas courts and appellate courts. In such cases, a reviewing court may reverse the board's determination only if it is unlawful, unreasonable, or against the manifest weight of the evidence. Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Serv. (1995), 73 Ohio St.3d 694,697.
Appellee's claim for unemployment benefits was denied on the ground that she was discharged for just cause pursuant to R.C. 4141.29(D) (2) (a). That section provides in relevant part:
 "(D) * * * [N]o individual may * * * be paid benefits under the following conditions:
"* * *
 "(2) For the duration of his unemployment if the administrator finds that:
 "(a) He quit his work without just cause or has been discharged for just cause in connection with his work * * *."
In unemployment cases, the determination of whether just cause exists necessarily depends upon the unique factual considerations of the particular case. Determinations of factual questions are primarily within the province of the board. Irvine v. Unemp. Comp. Bd. of Review (1985), 19 Ohio St.3d 15,17. On appeal, neither the trial court nor this court may make factual findings or determine the credibility of witnesses. Id. at 18. Our duty, rather, is to determine whether the decision off the board is supported by the evidence in the record, and the fact that reasonable minds might differ as to the conclusions reached is not a basis for reversal of the board's decision. Id.
Appellant argues that the board's finding was not unlawful, unreasonable or against the manifest weight of the evidence. Also, appellant maintains that the lower court improperly applied the standard of review, in determining credibility, where it determined that it was equally plausible to believe appellee. Appellant claims that the employer presented ample evidence before the hearing officer and that the decision was not unlawful, unreasonable, or against the manifest weight of the evidence.
In support of this challenge appellant maintains that appellee was discharged for just cause in connection with work as provided for under R.C. 4141.29(D) (2) (a). According to appellant, falsifying company records provides an employer with just cause for termination within the meaning of the statute, citing Herbert v. Admr., Ohio Bur. of Emp. Serv. (Dec. 28, 1984), Summit App. No. 11740, unreported; Wheat v. Ohio Dept. ofTrans. et al., (Oct. 28, 1988), Miami App. No. 88-CA-18, unreported; Ogle v. Ohio Bur. of Emp. Serv. (Feb. 22, 1980), Cuyahoga App. No. 40385, unreported.
However, the cases cited by appellant are distinguishable from the case herein. Herbert dealt with a salesman who prepared two days of reports detailing visits which were made.Wheat dealt with an employee who ran inspection analyses where 61 of 88 tests were found either not to be done or run contrary to the employer's procedure. Ogle dealt with an employee who by his own admission failed to record all the merchandise loaded on the delivery truck he was operating and which included evidence before the referee that the employee subsequently attempted to steal merchandise by virtue of his falsified documentation.
As noted by the lower court, this court's decision inBitzer v. May Dept. Stores (Nov. 1, 1990), Belmont App. No. 90-B-15, unreported, 1990 WL 167525, is more relevant to the case at hand. Although Bitzer involved a different set of facts, this court noted that a single incident of misconduct without loss to the employer normally would not constitute just cause for discharge.
Pinkerman indicated that appellee had never been issued any warnings prior to this incident. Furthermore, appellee made the notation to her own personal copy of the contract for her own reference and clarification. She never gave the copy to anyone else representing that it was a true copy (i.e., without notations) of the original contract with First Service. In contrast, appellee was forthright about having put the notation on her copy. Additionally, Pinkerman stated he was able to make the changes to First Service's advertising and reduced their bill accordingly.
In sum, we agree with the lower court that the board's decision was unlawful, unreasonable, or against the manifest weight of the evidence. Accordingly, appellant's sole assignment of error is without merit.
The judgment of the trial court is hereby affirmed.
Cox, J., concurs. Waite, J., concurs.
 ____________________ Gene Donofrio, Judge